1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9         FOR THE NORTHERN DISTRICT OF CALIFORNIA

10              SAN FRANCISCO DIVISION

| | |
|---|---|
| UNIVERSITY GAMES CORPORATION, | Case No. 3:23-cv-05583-LB |
| Plaintiff, | **FINAL JURY INSTRUCTIONS** |
| vs. | The Honorable Laurel Beeler<br>Action Filed:  October 30, 2023<br>Trial Date:      April 30, 2025 |
| FORBIDDEN GAMES, INC., and GLENN DROVER, | |
| Defendants. | |
| FORBIDDEN GAMES, INC., an Illinois corporation; and GLENN DROVER, an individual and citizen of Illinois, | Case No. 3:23-cv-05621-LB |
| Plaintiffs, | (CONSOLIDATED) |
| vs. | |
| UNIVERSITY GAMES CORPORATION, a California corporation; ROBERT MOOG, an individual and citizen of California; and CRAIG HENDRICKSON, an individual and citizen of California, | |
| Defendants. | |

1

## DUTY OF JURY

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you on the law that applies to this case. A copy of these instructions will be sent to the jury room for you to consult during your deliberations. It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so. Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

## BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true. You should base your decision on all of the evidence, regardless of which party presented it.

## BURDEN OF PROOF—CLEAR AND CONVINCING EVIDENCE

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

## TWO OR MORE PARTIES—DIFFERENT LEGAL RIGHTS

You should decide the case as to each party separately. Unless otherwise stated, the instructions apply to all parties.

**WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

1. the sworn testimony of any witness;

2. the exhibits that are admitted into evidence;

3. any facts to which the lawyers have agreed; and

4. any facts that I may instruct you to accept as proved.

**WHAT IS NOT EVIDENCE**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition some evidence was received only for a limited purpose; when I have instructed you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

**EVIDENCE FOR LIMITED PURPOSE**

Some evidence may be admitted only for a limited purpose. When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience and common sense.

## RULING ON OBJECTIONS

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been. Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

## CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. In considering the testimony of any witness, you may take into account:

(1)    the opportunity and ability of the witness to see or hear or know the things testified to;

(2)    the witness's memory;

(3)    the witness's manner while testifying;

(4)    the witness's interest in the outcome of the case, if any;

(5)    the witness's bias or prejudice, if any;

(6)    whether other evidence contradicted the witness's testimony;

(7)    the reasonableness of the witness's testimony in light of all the evidence; and

(8)    any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony. However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest. The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

## EXPERT OPINION

You have heard testimony from Andrew Chesney, Lela Lawless, and Christian Tregillis, who each testified to opinions and the reasons for his or her opinions. This opinion testimony is allowed, because of the education or experience of this witness. Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

## CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE

Certain charts and summaries not admitted into evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

## CHARTS AND SUMMARIES RECEIVED IN EVIDENCE

Certain charts and summaries have been admitted into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the testimony or other admitted evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

## BIAS

Each one of us has biases about or certain perceptions or stereotypes of other people. Bias is a tendency to favor or disfavor a person or group of people. We may be aware of some of our biases, though we may not share reveal them with to others. We may not be fully aware of some of our other biases. We refer to those biases that we are not fully aware of as "implicit" or "unconscious." They may be based on stereotypes we would reject if they were brought to our attention. Implicit or unconscious biases can affect how we perceive others and how we make decisions, without our being aware of the effect of these biases on those decisions.

Our biases often affect how we act, favorably or unfavorably, toward someone. Bias can affect our thoughts, how we remember, what we see and hear, and whom we believe or disbelieve. We may favor or be more likely to believe people whom we see as similar to us or with whom we identify. Or we may disfavor or be less likely to believe people whom we see as different from us.

As jurors you are being asked to make very important decisions in this case. You must not let bias, prejudice, or public opinion influence your decision. You must not be biased in favor of or against parties or witnesses because of their race, national origin, ethnicity, disability, gender, gender identity, gender expression, religion, sexual orientation, age, or socioeconomic status.

Your verdict must be based solely on the evidence presented. You must carefully evaluate the evidence and resist any urge to reach a verdict that is influenced by bias for or against any party or witness.

## WEALTH OF PARTIES

In reaching a verdict as to liability of any party, you may not consider the wealth or poverty of any party. The parties' wealth or poverty is not relevant to any of the liability issues that you must decide. However, as will be explained to you further later, the wealth or poverty of a party could be relevant as to the amount of punitive damages, if any, that you award and can be considered for that purpose.

## PARTY HAVING POWER TO PRODUCE BETTER EVIDENCE

You may consider the ability of each party to provide evidence. If a party provided weaker evidence when it could have provided stronger evidence, you may distrust the weaker evidence.

## WILLFUL SUPPRESSION OF EVIDENCE

You may consider whether one party intentionally concealed or destroyed evidence. If you decide that a party did so, you may decide that the evidence would have been unfavorable to that party.

**FAILURE TO EXPLAIN OR DENY EVIDENCE**

If a party failed to explain or deny evidence against them when they could reasonably be expected to have done so based on what they knew, you may consider their failure to explain or deny in evaluating that evidence.

It is up to you to decide the meaning and importance of the failure to explain or deny evidence against the party.

**EXPERT QUESTIONS CONTAINING ASSUMED FACTS**

The law allows expert witnesses to be asked questions that are based on assumed facts. These are sometimes called "hypothetical questions."

In determining the weight to give to the expert's opinion that is based on the assumed facts, you should consider whether the assumed facts are true.

**CONFLICTING EXPERT TESTIMONY**

If the expert witnesses disagreed with one another, you should weigh each opinion against the others. You should examine the reasons given for each opinion and the facts or other matters that each witness relied on. You may also compare the experts' qualifications.

**OPINION TESTIMONY OF LAY WITNESS**

A witness who was not testifying as an expert gave an opinion during the trial. You may, but are not required to, accept that opinion. You may give the opinion whatever weight you think is appropriate.

Consider the extent of the witness's opportunity to perceive the matters on which the opinion is based, the reasons the witness gave for the opinion, and the facts or information on which the witness relied in forming that opinion. You must decide whether information on which the witness relied was true and accurate. You may disregard all or any part of an opinion that you find unbelievable, unreasonable, or unsupported by the evidence.

**NO TRANSCRIPT AVAILABLE TO JURY**

During deliberations you will not have a transcript of the trial testimony.

**TAKING NOTES**

Whether or not you took notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those

of other jurors.

## DEPOSITIONS IN LIEU OF LIVE TESTIMONY

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial. Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

For the deposition testimony of Douglas Cribelar, which was presented by reading it out loud, do not place any significance on the behavior or tone of voice of any persons reading the questions or answers.

## IMPEACHMENT EVIDENCE—WITNESS

The evidence that a witness lied under oath on a prior occasion may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

## BENCH CONFERENCES AND RECESSES

From time to time during the trial, it became necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury was present in the courtroom, or by calling a recess. Please understand that while you were waiting, we were working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error. Of course, we have done what we could to keep the number and length of these conferences to a minimum. I did not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

## EVIDENCE IN ELECTRONIC FORMAT

Those exhibits received in evidence that are capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room. A computer, projector, printer and accessory equipment will be available to you in the jury room. A court technician will show you how to operate the computer and other equipment; how to locate and view the exhibits on the computer; and how to print the exhibits. You will also be provided with a paper list of all exhibits received in evidence. You may request a paper copy of any exhibit received in evidence by sending a note through the clerk. If you need additional equipment or supplies or if you have questions about how to operate the computer or other equipment, you may send a note to the clerk, signed by your foreperson or by one or more members of the jury. Do not

refer to or discuss any exhibit you were attempting to view. If a technical problem or question requires hands-on maintenance or instruction, a court technician may enter the jury room with the clerk, present for the sole purpose of assuring that the only matter that is discussed is the technical problem. When the court technician or any non juror is in the jury room, the jury shall not deliberate. No juror may say anything to the court technician or any non juror other than to describe the technical problem or to seek information about operation of the equipment. Do not discuss any exhibit or any aspect of the case. The sole purpose of providing the computer in the jury room is to enable jurors to view the exhibits received in evidence in this case. You may not use the computer for any other purpose. At my direction, technicians have taken steps to ensure that the computer does not permit access to the Internet or to any "outside" website, database, directory, game, or other material. Do not attempt to alter the computer to obtain access to such materials. If you discover that the computer provides or allows access to such materials, you must inform the court immediately and refrain from viewing such materials. Do not remove the computer or any electronic data from the jury room, and do not copy any such data.

## CONSIDERATION OF EVIDENCE—CONDUCT OF THE JURY

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations: Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, via text messaging, or any Internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, Tiktok or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court. Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it[, although I have no information that there will be news reports about this case]; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible. These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules. A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the

entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

## CORPORATIONS AND PARTNERSHIPS—FAIR TREATMENT

All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.

## LIABILITY OF CORPORATIONS—SCOPE OF AUTHORITY NOT IN ISSUE

Under the law, a corporation is considered to be a person. It can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

## BREACH OF CONTRACT—INTRODUCTION

University Games and Forbidden Games entered into a contract called the Asset Purchase Agreement.

Each party claims that the other breached this contract, and that the breach of this contract caused them harm and should pay damages.

Each party denies the claims of the other.

Glenn Drover also claims that he and University Games entered into a contract for University Games to pay him $70,000 for designing the game *Faeries & Magical Creatures*.

He claims that University Games breached this contract, and that the breach of this contract caused him harm and University Games should pay damages.

University Games denies this claim.

## BREACH OF CONTRACT—ESSENTIAL FACTUAL ELEMENTS

To recover damages for breach of contract, the party claiming breach of contract must prove all of the following:

1.   It entered into a contract with the other party;

2.
     a.  That it did all, or substantially all, of the significant things that the contract required them to do; or

     b.  That the party was excused from having to fully perform all obligations;

-9-    Case No. 3:23-cv-05583-LB

3.      That the other party's obligations under the contract were not waived or excused;

4.      That the other party failed to do something that the contract required them to do;

5.      That the party claiming breach of contract was harmed; and

6.      That the other party's breach of contract was a substantial factor in causing the harm to the party claiming breach of contract.

## CONTRACT FORMATION—ESSENTIAL FACTUAL ELEMENTS

Drover claims that the parties entered into an oral contract to develop the *Faeries* game for payment of $70,000. To prove that a contract was created, Drover must prove all of the following:

1.      That the contract terms were clear enough that the parties could understand what each was required to do;

2.      That the parties agreed to give each other something of value that they were not already entitled to; and

3.      That the parties agreed to the terms of the contract.

When you examine whether the parties agreed to the terms of the contract, ask yourself if, under the circumstances, a reasonable person would conclude, from the words and conduct of each party, that there was an agreement. You may not consider the parties' hidden intentions.

If Drover did not prove all of the above, then a contract was not created.

## ORAL OR WRITTEN CONTRACT TERMS

Contracts may be written or oral.

Contracts may be partly written and partly oral.

Oral contracts are just as valid as written contracts.

## SUBSTANTIAL PERFORMANCE

Each party contends that the other party did not perform all of the things that the other party was required to do under the contract, and therefore the party accused of breach did not have to perform its obligations under the contract. To overcome this contention, the party claiming breach must prove both of the following:

1.  That it made a good faith effort to comply with the contract; and

2.  That the other party received essentially what the contract called for because its failures, if any, were so trivial or unimportant that they could have been easily fixed or paid for.

## INTRODUCTION TO CONTRACT DAMAGES

If you decide that University Games, Forbidden Games, or Drover have proved its or his claim against the other for breach of contract, you also must decide how much money will reasonably compensate it or him for the harm caused by the breach. This compensation is called "damages." The purpose of such damages is to put a party in as good a position as they would have been if the other party had performed as promised.

To recover damages for any harm, a party claiming breach of contract must prove that when the contract was made, both parties knew or could reasonably have foreseen that the harm was likely to occur in the ordinary course of events as result of the breach of the contract.

The party claiming breach also must prove the amount of their damages according to the following instructions. They do not have to prove the exact amount of damages. You must not speculate or guess in awarding damages.

## INSTRUCTION REGARDING ACCOUNTS RECEIVABLE

It is the court's duty to instruct you on how the Asset Purchase Agreement is interpreted. In determining whether there has been a breach of contract, you should evaluate whether the contract has been breached based on the following interpretation of the Asset Purchase Agreement:

The Asset Purchase Agreement required Forbidden Games to transfer ownership of all rights for payment from customers ("accounts receivable"). This obligation does not depend on whether the payments were collectable, or whether they were older than 60 days past due. Forbidden Games promised to sell, transfer, convey, and deliver all accounts receivable to University Games regardless of the date of any invoice.

The parties were required to identify which accounts receivable were older than 60 days past due in order to calculate the purchase price adjustment, under section 2.8, but doing so does not affect the ownership of the assets, including the accounts receivable, under the contract.

1
2      The parties did agree to allocate certain amounts of the purchase price for tax purposes in section 2.11, but this does not affect the ownership of assets, including the accounts receivable, under the contract.

3
4      The term providing the ownership of assets, including the accounts receivable, is section 2.2. That term provided that "all" accounts receivable would be transferred to University Games. Thus, after April 20, 2022, all right to receive payments from customers belonged to University Games, and not Forbidden Games.

5

6

7      **INSTRUCTION REGARDING REIMBURSEMENT OF MOSAIC COSTS**

8      Section 2.5 of the Asset Purchase Agreement required University Games to pay for any costs for the European distributors listed in contract Schedule 2.5 (that is, Sylex, Arrakis, Pendragon, Portal, and Lucky Duck). Section 8.2(a)(iv) required Forbidden Games to reimburse certain costs to University Games: specifically, costs for manufacturing, shipping, and fulfillment of the 2021 Mosaic Kickstarter to deliver Mosaic-Collossus Edition Games, Mosaic-Sphinx Edition Games, and various add-ons. Forbidden Games's obligation to reimburse includes, but is not limited to, the cost of manufacturing the games, shipping and handling, and insurance related to those products.

9

10

11

12

13

14      **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR**

15      **DEALING—ESSENTIAL FACTUAL ELEMENTS**

16      In every contract or agreement there is an implied promise of good faith and fair dealing. This implied promise means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract. Good faith means honesty of purpose without any intention to mislead or to take unfair advantage of another. Generally speaking, it means being faithful to one's duty or obligation. However, the implied promise of good faith and fair dealing cannot create obligations that are inconsistent with the terms of the contract.

17

18

19

20      The implied promise of good faith and fair dealing exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made. It cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement.

21

22

23      Forbidden Games claims that University Games violated the duty to act fairly and in good faith. To establish this claim, Forbidden Games must prove all of the following:

24

25      1.    That Forbidden Games and University Games entered into a contract;

26      2.    That Forbidden Games did all, or substantially all of the significant things that the contract required it to do or that was excused from having to do those things;

27      3.    That all conditions required for University Games' performance had occurred or were excused;

28

4.    That University Games prevented Forbidden Games from receiving the full benefits under the APA;

5.    That by doing so, University Games did not act fairly and in good faith; and

6.    That Forbidden was harmed by University Games' conduct.

**AFFIRMATIVE DEFENSE—BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING—GOOD FAITH THOUGH MISTAKEN BELIEF**

University Games claims that it did not breach the duty to act fairly and in good faith because it believed that there was a legitimate and reasonable business purpose for the conduct.

To succeed, University Games must prove both of the following:

1.    That its conduct was based on an honest belief that it was not preventing Forbidden Games from receiving the full benefit of the APA; and

2.    That, if true, the actions it took in this regard would have been a legitimate and reasonable business purpose for the conduct.

**INTENTIONAL MISREPRESENTATION**

University Games claims that Forbidden Games and Glenn Drover made false representations that harmed it.

To establish a claim for intentional misrepresentation, University Games must prove all of the following:

1.    That Forbidden Games or Drover represented to it that a particular fact was true;

2.    That the representation was false;

3.    That Forbidden Games or Drover knew it was false when they made it, or that they made the representation recklessly and without regard for its truth;

4.    That Forbidden Games or Drover intended that University Games rely on the representation;

5.    That University Games reasonably relied on the representation;

6.    That University Games was harmed; and

7.    That University Games' reliance on the representation was a substantial factor in causing it harm.

# CONCEALMENT

University Games also claims that it was harmed because Glenn Drover concealed certain information. To establish this claim, University Games must prove all of the following:

1.   That Glenn Drover concealed the facts because he:

    a.   disclosed some facts to University Games but intentionally failed to disclose other facts, making the disclosure deceptive; or

    b.   that Glenn Drover intentionally failed to disclose certain facts that were known only to him and that University Games could not reasonably have discovered;

2.   That University Games did not know of the concealed facts;

3.   That Glenn Drover intended to deceive University Games by concealing the facts;

4.   That had the omitted information been disclosed, University Games reasonably would have behaved differently;

5.   That University Games was harmed; and

6.   That Drover's concealment was a substantial factor in causing University Games' harm.

# FALSE PROMISE

University Games claims it was harmed because Glenn Drover and Forbidden Games made false promises.

Forbidden Games claims it was harmed because Bob Moog, Craig Hendrickson, and University Games made false promises.

Glenn Drover claims he was harmed because Mr. Moog, Mr. Hendrickson, and University Games made false promises.

For purposes of this instruction, "person" includes a company.

To establish this claim, a party making a claim of false promise must prove all of the following:

1.  That a person made a promise to it or him;

2.  That the person who made the promise did not intend to perform the promise when it or he made it;

3.  That the person who made the promise intended that the person who claims false promise rely on the promise;

4.  That the person who claims false promise reasonably relied on the promise;

5.  That the person who made the promise did not perform the promised act or acts;

6.  That the person who claims false promise was harmed; and

7.  That the reliance on the promise by the person who claims false promise was a substantial factor in causing them harm.

# RELIANCE

A party relied on the other's misrepresentation/concealment/false promise if:

1.  The misrepresentation/concealment/false promise substantially influenced its decision to take a particular action (e.g., enter into the Asset Purchase Agreement; enter into employment, make a payment, or design Faeries); and

2.  They would probably not have taken that action without the concealment/false promise.

It is not necessary for a misrepresentation/concealment/false promise to be the only reason for the relying party's conduct.

# REASONABLE RELIANCE

In determining whether reliance on a misrepresentation, concealment or false promise was reasonable, the party claiming the misrepresentation, concealment or false promise, must first prove that the matter was material. A matter is material if a reasonable person would find it important in deciding what to do.

If you decide that the matter is material, you must then decide whether it was reasonable for the party making the claim to rely on the misrepresentation/concealment/false promise. In making this decision, take into consideration their intelligence, knowledge, education, and experience.

However, it is not reasonable for anyone to rely on a misrepresentation/concealment/false promise that is preposterous. It also is not reasonable for anyone to rely on a misrepresentation/concealment/false promise if facts that are within their observation show that it is obviously false.

# DAMAGES — "BENEFIT OF THE BARGAIN" RULE

If you decide that a party has proved its claim against the other for concealment or false promise, you also must decide how much money will reasonably compensate them for the harm. This compensation is called "damages."

The amount of damages must include an award for all harm that the other party's wrongful conduct was a substantial factor in causing, even if the particular harm could not have been anticipated.

The party claiming damages must prove the amount of their damages. However, they do not have to prove the exact amount of damages that will provide reasonable compensation for the harm. You must not speculate or guess in awarding damages.

To determine the amount of damages, you must:

1.    Determine the value that the party would have received if the representations made by the other had been true; and

2.    Subtract the value of what they did receive.

The resulting amount is their damages.

### FEHA RETALIATION—ESSENTIAL FACTUAL ELEMENTS

Glenn Drover claims that University Games retaliated against him for opposing or complaining about discrimination or severe or pervasive harassing conduct (constituting unwelcome verbal, physical, or visual conduct), in the work environment that a reasonable person would consider to be hostile, intimidating, offensive, oppressive, or abusive towards women. To establish this claim, Glenn Drover must prove all of the following:

1. That Glenn Drover opposed or complained about discrimination or severe or pervasive harassing conduct (constituting unwelcome verbal, physical, or visual conduct), in the work environment that a reasonable person would consider to be hostile, intimidating, offensive, oppressive, or abusive towards women;

2. That University Games subjected Glenn Drover to an adverse employment action or constructively discharged him;

3. That Glenn Drover's opposition to and complaints of perceived harassment and discrimination of women in the work environment was a substantial motivating reason for University Games' adverse employment action towards or constructive discharge of Glenn Drover;

4. That Glenn Drover was harmed; and

5. That University Games's adverse employment action or constructive discharge was a substantial factor in causing him harm.

Glenn Drover does not have to prove that there was discrimination or harassment against women in order to be protected from retaliation. If he reasonably believed that University Games, Robert Moog or Craig Hendrickson's conduct was unlawful, he may prevail on a retaliation claim even if you do not find that there actually was discrimination or harassment against women.

### "HARASSING CONDUCT" EXPLAINED

Harassing conduct may include, but is not limited to, any of the following:

a. Verbal harassment, such as obscene language, demeaning comments, slurs, threats, or intimidating, offensive or abusive language and comments; or

b. Physical harassment, such as unwanted touching, assault, or physical interference with normal work or movement; or

c. Visual harassment, such as offensive posters, objects, cartoons, or drawings; or

d. Unwanted sexual advances.

## "SEVERE OR PERVASIVE" EXPLAINED

"Severe or pervasive" means conduct that alters the conditions of employment and creates a work environment that is hostile, intimidating, offensive, oppressive, or abusive.

In determining whether the conduct was severe or pervasive, you should consider all the circumstances, including any or all of the following:

(a)    The nature of the conduct;

(b)    How often, and over what period of time, the conduct occurred;

(c)    The circumstances under which the conduct occurred;

(d)    Whether the conduct was physically threatening or humiliating.

Glenn Drover does not have to prove that his or other employees' productivity has declined. It is sufficient to prove that a reasonable person who was subjected to the harassing conduct would find that the conduct so altered working conditions as to make it more difficult to do the job.

A single incident can be sufficiently severe or pervasive to constitute harassment.

## "ADVERSE EMPLOYMENT ACTION" EXPLAINED

Glenn Drover must prove that he was subjected to an adverse employment action or a constructive discharge.

Adverse employment actions are not limited to ultimate actions such as termination or demotion. There is an adverse employment action if University Games, Robert Moog, or Craig Hendrickson have taken an action or engaged in a course or pattern of conduct that, taken as a whole, materially and adversely affected the terms, conditions, or privileges of Glenn Drover's employment. An adverse employment action includes conduct that is reasonably likely to impair a reasonable employee's job performance or prospects for advancement or promotion. However, minor or trivial actions or conduct that is not reasonably likely to do more than anger or upset an employee cannot constitute an adverse employment action.

## "SUBSTANTIAL MOTIVATING REASON" EXPLAINED

A "substantial motivating reason" is a reason that actually contributed to the adverse employment action. It must be more than a remote or trivial reason. It does not have to be the only reason motivating the adverse employment action or constructive discharge.

## "CONSTRUCTIVE DISCHARGE" EXPLAINED

Glenn Drover must prove that he was constructively discharged. To establish constructive discharge, Glenn Drover must prove the following:

1.   That University Games through its officers, directors, managing agents, or supervisory employees intentionally created or knowingly permitted working conditions to exist that were so intolerable that a reasonable person in Glenn Drover's position would have had no reasonable alternative except to resign; and

2.   That Glenn Drover resigned because of these working conditions.

In order to be sufficiently intolerable, adverse working conditions must be unusually aggravated or amount to a continuous pattern. In general, single, trivial, or isolated acts of misconduct are insufficient to support a constructive discharge claim. But in some circumstances, a single intolerable incident may constitute a constructive discharge.

## BUSINESS JUDGMENT FOR "AT-WILL" EMPLOYMENT

In California, employment is presumed to be "at will." This means that an employer may demote or discharge an employee for no reason, or for a good, bad, mistaken, unwise, or even unfair reason, as long as its action is not for a discriminatory or retaliatory reason.

## WHISTLEBLOWER PROTECTION—ESSENTIAL FACTUAL ELEMENTS (LAB. CODE, § 1102.5)

Glenn Drover claims that University Games subjected him to an adverse employment action or constructively terminated him in retaliation for his disclosure of information of or refusal to participate in an unlawful act. To establish this claim, Glenn Drover must prove all of the following are more likely true than not true:

1.   That University Games was Glenn Drover's employer;

2.
   a.   That Glenn Drover disclosed or University Games believed that Glenn Drover had disclosed or might disclose to a government agency, law enforcement agency, or person with authority over Glenn Drover, or an employee with authority to investigate, discover, or correct legal violations/noncompliance, that University Games:
      (i)   was abusing or mistreating the women in the company;
      (ii)  was violating federal postal rules regarding the use of USPS Media Mail;
      (iii) was fraudulently buying back games from Target in connection with the Raccoon Tycoon game; or
      (iv)  was failing to timely pay University Games' workers; or

       b.     That Glenn Drover refused to participate in University Games':

           (i)     gender-based discrimination or harassment in the work environment,

           (ii)    use of USPS Media Mail,

           (iii)   buybacks from Target in connection with the Raccoon Tycoon game, and/or

           (iv)   failure to timely pay University Games' workers;

3.

       a.     That Glenn Drover had reasonable cause to believe that the information disclosed a violation of a state/federal statute or a violation of a local/state/federal rule or regulation; or

       b.     That Glenn Drover's participation in the following specific activities would result in a violation of a state/federal statute or a violation of a local/state/federal rule or regulation:

           (i)     gender-based discrimination or harassment in the work environment,

           (ii)    use of USPS Media Mail,

           (iii)   buybacks from Target in connection with the Raccoon Tycoon game, and/or

           (iv)   failure to timely pay University Games' workers;

4.     That University Games subjected Glenn Drover to an adverse employment action or constructively discharged Glenn Drover;

5.     That Glenn Drover's disclosure of information or refusal to participate in said conduct was a contributing factor in University Games' adverse employment action(s) against, or decision to, constructively discharge Glenn Drover;

6.     That Glenn Drover was harmed; and

7.     That University Games, Robert Moog, or Craig Hendrickson's conduct was a substantial factor in causing Glenn Drover's harm.

Gender-based discrimination or harassment in the work environment requires that University Games engaged in discrimination against women or severe or pervasive harassing conduct in the work environment that a reasonable person would consider to be hostile, intimidating, offensive, oppressive, or abusive towards women.

A "contributing factor" is any factor, which alone or in connection with other factors, tends to affect the outcome of a decision. A contributing factor can be proved even when other legitimate factors also contributed to the employer's decision.

The disclosure of policies that an employee believes to be merely unwise, wasteful, gross misconduct, or the like, is not protected. Instead, Glenn Drover must have reasonably believed that

1   University Games' policies violated federal, state, or local statutes, rules, or regulations.

2       It is not Glenn Drover's motivation for his disclosure, but only the content of that
3   disclosure, that determines whether the disclosure is protected.

4       A disclosure is protected even though disclosing the information may be part of Glenn
    Drover's job duties.

5
6       A disclosure is protected even though the employer already knew about the information
    disclosed.

7

8   **CONSTRUCTIVE DISCHARGE IN VIOLATION OF PUBLIC POLICY—PLAINTIFF
9   REQUIRED TO ENDURE INTOLERABLE CONDITIONS THAT VIOLATE PUBLIC
    POLICY**

10      Glenn Drover claims that University Games, Robert Moog, and Craig Hendrickson forced
11  him to resign for reasons that violate public policy. It is a violation of public policy for an
    employer to retaliate against an individual who opposes or complains about conduct he reasonably
12  believes constitutes: (A) unlawful harassment or discrimination of women in the workplace; (B) a
    violation of any state or federal law; or (C) refusing to participate in an unlawful act.

13
14      To establish this claim, Mr. Drover must prove all of the following:

15      1.      That Mr. Drover was employed by University Games;

16      2.      That Mr. Drover was subjected to working conditions that violated public policy, in
17  that he was retaliated against for

18              a.      opposing or complaining about discrimination or severe or pervasive
                        harassing conduct (constituting unwelcome verbal, physical, or visual
19                      conduct), in the work environment that a reasonable person would consider
                        to be hostile, intimidating, offensive, oppressive, or abusive towards
20                      women, or

21              b.      for disclosing information of or refusing to participate in any act that
                        violates state or federal law.;
22

23      3.      That University Games, Robert Moog, and/or Craig Hendrickson intentionally
                created or knowingly permitted these working conditions;
24

25      4.      That these working conditions were so intolerable that a reasonable person in Mr.
                Drover's position would have had no reasonable alternative except to resign;

26      5.      That Mr. Drover resigned because of these working conditions;

27      6.      That Mr. Drover was harmed; and

28

7.    That these working conditions were a substantial factor in causing Mr. Drover's harm.

To be intolerable, the adverse working conditions must be unusually aggravated or involve a continuous pattern of mistreatment. Trivial acts are insufficient.

### INTRODUCTION TO TORT DAMAGES—LIABILITY CONTESTED

If you decide that Glenn Drover has proved his retaliation or constructive discharge claims against University Games, you also must decide how much money will reasonably compensate Mr. Drover for the harm. This compensation is called "damages."

The amount of damages must include an award for each item of harm that Glenn Drover proves was caused by University Games' wrongful conduct, even if the particular harm could not have been anticipated.

Mr. Drover does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. However, you must not speculate or guess in awarding damages.

### ECONOMIC AND NONECONOMIC DAMAGES

The damages claimed by Glenn Drover for the harm caused by University Games fall into two categories called economic damages and noneconomic damages. You will be asked on the verdict form to state the two categories of damages separately.

### PAST AND FUTURE LOST EARNINGS (ECONOMIC DAMAGE)

To recover damages for past lost earnings, Glenn Drover must prove the amount of income and earnings that he has lost to date.

To recover damages for future lost earnings, Glenn Drover must prove the amount of income and earnings he will be reasonably certain to lose in the future as a result of the injury.

### DAMAGES FROM EMPLOYER FOR WRONGFUL DISCHARGE (ECONOMIC DAMAGE)

If you find that University Games constructively discharged Glenn Drover in violation of public policy and the Fair Employment and Housing Act, or engaged in other adverse employment actions, then you must decide the amount of past and future earnings that Glenn Drover has proven he is entitled to recover, if any. To make that decision, you must:

1.    Decide the amount that Glenn Drover would have earned up to today, including any benefits and pay increases; and

2.    Add the present cash value of any future wages and benefits that he would have earned for the length of time the employment with University Games was reasonably certain to continue.

In determining the period that Glenn Drover's employment was reasonably certain to have continued, you should consider such things as:

(a)    Glenn Drover's age, work performance, and intent regarding continuing employment with University Games;

(b)    University Games' prospects for continuing the operations involving Glenn Drover; and

(c)    Any other factor that bears on how long Glenn Drover would have continued to work.

## ARGUMENTS OF COUNSEL NOT EVIDENCE OF DAMAGES

The arguments of the attorneys are not evidence of damages. Your award must be based on your reasoned judgment applied to the testimony of the witnesses and the other evidence that has been admitted during trial.

## DUTY TO MITIGATE DAMAGES FOR PAST LOST EARNINGS

Glenn Drover is not entitled to recover damages for economic losses that University Games proves Glenn Drover could have avoided by returning to gainful employment as soon as it was reasonable for him to do so.

To calculate the amount of damages you must:

1.    Determine the amount Glenn Drover would have earned from the job he held at the time he was injured; and

2.    Subtract the amount Glenn Drover earned or could have earned by returning to gainful employment.

The resulting amount is Glenn Drover's damages for past lost earnings.

## DUTY TO MITIGATE DAMAGES FOR FUTURE LOST EARNINGS

Glenn Drover is not entitled to recover damages for future economic losses that University Games proves Glenn Drover will be able to avoid by returning to gainful employment as soon as it

is reasonable for him to do so.

If you decide that Glenn Drover will be able to return to work, then you must not award him any damages for the amount he will be able to earn from future gainful employment. To calculate the amount of damages you must:

1.  Determine the amount Glenn Drover would have earned from the job he held at the time he was injured; and

2.  Subtract the amount Glenn Drover is reasonably able to earn from alternate employment.

The resulting amount is Glenn Drover's damages for future lost earnings.

### AFFIRMATIVE DEFENSE—EMPLOYEE'S DUTY TO MITIGATE DAMAGES

University Games claims that if Glenn Drover is entitled to any damages, they should be reduced by the amount that he could have earned from other employment. To succeed, University Games must prove all of the following:

1.  That employment substantially similar to Glenn Drover's former job was available to him;

2.  That Glenn Drover failed to make reasonable efforts to seek this employment; and
3.  The amount that Glenn Drover could have earned from this employment.

In deciding whether the employment was substantially similar, you should consider, among other factors, whether:

(a)  The nature of the work was different from Glenn Drover's employment with University Games;

(b)  The new position was substantially inferior to Glenn Drover's former position;

(c)  The salary, benefits, and hours of the job were similar to Glenn Drover's former job;

(d)  The new position required similar skills, background, and experience;

(e)  The job responsibilities were similar; and

(f)  The job was in the same locality,

### JURORS NOT TO CONSIDER ATTORNEY FEES AND COURT COSTS

You must not consider, or include as part of any award, attorney fees or expenses that the

parties incurred in bringing or defending this lawsuit.

### PUNITIVE DAMAGES—INDIVIDUAL AND ENTITY DEFENDANTS—TRIAL NOT BIFURCATED

You may consider whether to award punitive damages for certain claims in the case. Punitive damages are not available for breach of contract, but are available for fraud, retaliation, and wrongful termination in violation of public policy.

If you decide that (a) University Games, Mr. Moog, or Mr. Hendrickson harmed Forbidden Games or Glenn Drover by fraudulent conduct, or (b) University Games harmed Mr. Drover by retaliating against him or wrongfully terminating his employment, you must decide whether that conduct justifies an award of punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the plaintiff and to discourage similar conduct in the future.

You may award punitive damages against Robert Moog, or Craig Hendrickson only if Forbidden Games or Glenn Drover prove by clear and convincing evidence that University Games, Mr. Moog, or Mr. Hendrickson engaged in that conduct with malice, oppression, or fraud.

You may award punitive damages against University Games as a company only if Forbidden Games or Glenn Drover prove that University Games as a company acted with malice, oppression, or fraud. To do this, Forbidden Games and Glenn Drover must prove one of the following by clear and convincing evidence:

1.  That the malice, oppression, or fraud was conduct of one or more officers, directors, or managing agents of University Games, who acted on behalf of the company; or

2.  That an officer, a director, or a managing agent of University Games had advance knowledge of the unfitness of Mr. Moog or Mr. Hendrickson and employed him with a knowing disregard of the rights or safety of others; or

3.  That the conduct constituting malice, oppression, or fraud was authorized by one or more officers, directors, or managing agents of University Games; or

4.  That one or more officers, directors, or managing agents of University Games knew of the conduct constituting malice, oppression, or fraud and adopted or approved that conduct after it occurred.

"Malice" means that a defendant acted with intent to cause injury or that a defendant's conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another. A defendant acts with knowing disregard when the defendant is aware of the probable dangerous consequences of his or its conduct and deliberately fails to avoid those consequences.

"Oppression" means that a defendant's conduct was despicable and subjected Glenn Drover or Forbidden Games to cruel and unjust hardship in knowing disregard of his or its rights.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

"Fraud" means that a defendant intentionally misrepresented or concealed a material fact and did so intending to harm Glenn Drover or Forbidden Games.

An employee is a "managing agent" if he or she exercises substantial independent authority and judgment in his or her corporate decision making such that his or her decisions ultimately determine corporate policy.

There is no fixed formula for determining the amount of punitive damages, and you are not required to award any punitive damages. If you decide to award punitive damages, you should consider all of the following factors separately for each of University Games, Mr. Moog, or Mr. Hendrickson in determining the amount:

(a)    How reprehensible was University Games, Mr. Moog, or Mr. Hendrickson's conduct? In deciding how reprehensible University Games, Mr. Moog, or Mr. Hendrickson's conduct was, you may consider, among other factors:

   1.    Whether the conduct caused physical harm;

   2.    Whether University Games, Mr. Moog, or Mr. Hendrickson disregarded the health or safety of others;

   3.    Whether Forbidden Games or Glenn Drover were financially weak or vulnerable and University Games, Mr. Moog, or Mr. Hendrickson knew Forbidden Games or Glenn Drover were financially weak or vulnerable and took advantage of him or it;

   4.    Whether University Games, Mr. Moog, or Mr. Hendrickson's conduct involved a pattern or practice; and

   5.    Whether University Games, Mr. Moog, or Mr. Hendrickson acted with trickery or deceit.

(b)    Is there a reasonable relationship between the amount of punitive damages and Forbidden Games or Glenn Drover's harm, or between the amount of punitive damages and potential harm to Forbidden Games or Glenn Drover that University Games, Mr. Moog, or Mr. Hendrickson knew was likely to occur because of his or its conduct?

(c)    In view of University Games, Mr. Moog, or Mr. Hendrickson's financial condition, what amount is necessary to punish it and discourage future wrongful conduct? You may not increase the punitive award above an amount that is otherwise appropriate merely because University Games, Mr. Moog, or Mr. Hendrickson has substantial financial resources. Any award you impose may not exceed that defendant's ability to pay.

Punitive damages may not be used to punish a person for the impact of his or its alleged misconduct on persons other than the parties to the lawsuit.

## USE OF INTERROGATORIES

Evidence was presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

## RETURN OF VERDICT

A verdict form has been prepared for you, covering each claim of the parties. After you have reached unanimous agreement on a verdict, your foreperson should complete the verdict form according to your deliberations, sign and date it, and advise the clerk that you are ready to return to the courtroom.

## DUTY TO DELIBERATE

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court. You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous. Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views. It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

## COMMUNICATION WITH COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through the clerk, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.